## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ALVINA L. GAINES-HOOKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-07-1422-M** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits.  Chief United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  The Commissioner has answered and filed the administrative record (hereinafter Tr. __).  As the parties have briefed their positions, the matter is at issue.  For the following reasons, it is recommended that the decision of the Commissioner be reversed.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income benefits on January 30, 2004, alleging a disability onset date of September 26, 2003, caused by back, neck, and mental problems.  Tr. 53-56, 66.  The application was denied on initial consideration and on reconsideration at the administrative level.  Tr. 25, 26, 29-31, 33-34.

Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on March 2, 2006. Tr. 35, 308-32. Plaintiff appeared in person with an attorney, and offered testimony in support of her application. Tr. 310, 311-29. At the request of the administrative law judge, a vocational expert also appeared and testified. Tr. 39-42, 330-32. The administrative law judge issued his decision on August 24, 2006, finding that Plaintiff was not disabled within the meaning of the Social Security Act, and thus she was not entitled to benefits. Tr. 12-13, 14-24. The Appeals Council denied Plaintiff's request for review on October 22, 2007, and therefore the decision of the administrative law judge became the final decision of the Commissioner. Tr. 6-8.

## II. STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). To determine whether a claimant is disabled, the Commissioner employs a

five-step sequential evaluation process.  20 C.F.R. § 416.920; <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).  The claimant bears the burden to establish a prima facie case of disability at steps one through four.  <u>Williams</u>, 844 F.2d at 751 & n.2.  If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience.  <u>Id.</u> at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge  followed the sequential evaluation process set forth in 20 C.F.R. § 416.920.  Tr. 15.  He first found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of September 26, 2003.  Tr. 16.  At steps two and three, the administrative law judge found that Plaintiff suffers from the severe impairments of affective disorder, bipolar disorder, and history of cervical disc disease, but he found that these impairments were not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr. 16-17.  The administrative law judge next found that, factoring in Plaintiff's substance abuse disorder, Plaintiff has the physical residual functional capacity to perform all exertional levels of work, compromised by an expectation that Plaintiff would be away from her work station for two to three hours per day resting or reclining due to pain and discomfort.  Tr. 17.  The administrative law judge further determined that Plaintiff is unable to complete a work day without interruptions due to psychologically based symptoms, was unable to perform at a consistent pace without an

unreasonable number of rest periods and would need to work in relative isolation with limited contact with peers and supervisors.  Tr. 17.   Based on this residual functional capacity assessment, the administrative law judge found at step four of the sequential evaluation process that Plaintiff was not able to perform her past relevant work.  Tr. 19. Considering Plaintiff's age, education, work experience, and residual functional capacity, the administrative law judge determined that Plaintiff was disabled.  Tr. 19.

However, the administrative law judge also went on to consider the effects of Plaintiff's substance abuse and concluded that if Plaintiff ceased substance abuse, she would continue to have a severe impairment or combination of impairments, though none severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.   Tr. 19-20.  Discounting the effects of substance abuse on Plaintiff's residual functional capacity, the administrative law judge then concluded Plaintiff would have the ability to perform a wide range of light work with occasional bending forward at the waist, occasional bending at the knees to come to rest on the knees, and occasional bending downward by bending the legs and spine, but she could still not perform her past relevant work.  Tr. 20, 23.  Thus, again considering Plaintiff's age, education, work experience, and residual functional capacity without the effects of substance abuse, the administrative law judge concluded that Plaintiff would not be disabled.  Tr. 23-24.  Accordingly, the administrative law judge found that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability and, therefore, she was not disabled.

**IV.  PLAINTIFF'S ARGUMENTS ON APPEAL**

Plaintiff raises one issue on appeal. She contends that the administrative law judge's conclusion that her substance abuse is a contributing factor material to the determination of disability is not supported by substantial evidence.  Plaintiff's Opening Brief, p. 9-15.

**V.  DISCUSSION**

In connection with her sole claim on appeal, Plaintiff argues that substantial evidence does not support the administrative law judge's conclusion that substance abuse is a contributing factor material to the determination of her disability.  Plaintiff's Opening Brief, p. 9-15.  Specifically, Plaintiff explains that there is a lack of substantial evidence supporting the administrative law judge's conclusion that the pain associated with her physical impairments would change in the absence of substance abuse.  Id. at 9-10.  She contends that the administrative law judge did not cite any medical opinion or record to support his conclusion that her substance abuse materially contributed to the pain and discomfort she experiences as a result of her physical limitations.  Id. at 13-15.  Plaintiff also argues that the administrative law judge's decision is "internally inconsistent and nonsensical" because the administrative law judge did not explain how he concluded that a person who suffers from chronic pain would experience more pain and discomfort by using drugs and/or alcohol.  Id. at 15.

The Commissioner responds to Plaintiff's substantial evidence argument by pointing

to evidence supporting the administrative law judge's finding.  Commissioner's Response Brief, p. 7.  The Commissioner notes that Plaintiff's physical impairments were evaluated during a period of sobriety and that the results of that evaluation support the conclusion that substance abuse materially affected Plaintiff's disability.  Id.  The Commissioner also contends that the administrative law judge's inclusion of a two to three hour period of rest during the work day in the residual functional capacity assessment that accounted for Plaintiff's substance abuse is merely a "harmless error" and that the administrative law judge clearly did not mean to include such a finding in his assessment.  Id. at 8.

In reply, Plaintiff argues that the administrative law judge's finding that she needs a two to three hour period of rest during the work day is not a mere clerical error as the Commissioner suggests and she then discusses the medical evidence supporting her assertion. Reply, pp.  3-7.

The Contract with America Advancement Act of 1996 provides that "an individual shall not be considered to be disabled [under either Title II or XVI of the Social Security Act] . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J); accord 20 C.F.R. § 416.935.  If an administrative law judge finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the administrative law judge "must determine whether . . . drug addiction or alcoholism is

a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). The "key factor" in making this determination is whether the claimant would still be found disabled if she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1).

A two-step analysis is required to determine whether drug addiction or alcoholism is a contributing factor material to a determination of disability. First, the administrative law judge must determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use. Then, the administrative law judge must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied. See 20 C.F.R. § 416.935(b)(2)(i). If the claimant would still be considered disabled due to her remaining limitations, the claimant's alcoholism or drug addiction is not a contributing factor material to a determination of disability and the claimant is entitled to benefits. See 20 C.F.R. § 416.935(b)(2)(ii).

The medical evidence submitted to the administrative law judge shows that in October 2002, Plaintiff began seeing an orthopedist, Dr. Warren Low, for complaints of upper left extremity pain that she stated had been ongoing for the past five years. She indicated she was experiencing numbness and tingling in her left hand. Tr. 116. Dr. Low observed a very positive Tinel's sign on Plaintiff's left wrist, weakness of thumb and little finger opposition,

and a little atrophy of her thenar muscle mass on the left side.  Tr. 116.  As to Plaintiff's shoulder, Dr. Low noted that Plaintiff could make her left shoulder "snap and pop and crunch and grate and grind," but he observed that her shoulder had a full range of motion and muscle strength in spite of the popping and crepitation.  Tr. 117.  An MRI was performed on Plaintiff's left shoulder on October 4, 2002, the day after Plaintiff's first visit with Dr. Low.  The radiologist observed a small subcortical cyst to the left of the greater tuberosity, but he found the MRI unremarkable otherwise.  Tr. 112.  The same day, a neurologist performed an electromyogram and nerve conduction study on her left upper arm which was normal.  Tr. 113-15.  After reviewing the results of these studies, Dr. Low treated Plaintiff with one set of injections.  Tr. 115.

In January 2003, Plaintiff began seeing a pain management specialist, Dr. Randall Henthorn, and reported that she was experiencing left-sided low posterior neck pain which she attributed to being struck by a two-by-four piece of wood 15 years earlier.  Tr. 176.  Dr. Henthorn found a normal range of motion, normal stability, and normal strength and tone in Plaintiff's head and neck, but he noted the presence of tenderness.  Tr. 177.  Dr. Henthorn suspected facet joint subluxation with possible arthritis at Plaintiff's C5-6 joint or lower joint.  He suggested injections at C5-6 on Plaintiff's left side.  Tr. 178.  Later that same month, Dr. Henthorn gave Plaintiff injections targeting her C3, C4, and C5 medial branch nerves to treat her tenderness through the left paraspinal region.  Tr.173.  On April 23, 2003, Plaintiff

8

visited Dr. Henthorn again.  Tr. 169.  Dr. Henthorn remarked that an MRI scan of Plaintiff's neck showed multiple level small spinal canal and foramina, and he remarked that her pain was not neuropathic.  Id.  Plaintiff reported that the  previous nerve injections at C3, C4, and C5 helped temporarily.  Id.  Dr. Henthorn noted that Plaintiff had a full active range of motion with a pain trigger point in her left trapezoid at the C5 level.  Id.  He found that she experienced pain at the C4-5 level in the posterior neck and that her left shoulder was painful during normal elevation and loaded movements, and that she experienced pain in her left shoulder and arm.  Id.  Dr. Henthorn gave Plaintiff an injection and a Lortab prescription. Dr. Henthorn also referred Plaintiff to an orthopedic surgeon to determine whether she had rotator cuff or impingement syndrome.  Id.

On June 17, 2003, Plaintiff contacted Dr. Henthorn and reported experiencing increased shoulder pain and numbness for the preceding week.  Tr. 172.  She requested a prescription refill and stated that she had not visited the orthopedic surgeon yet because she could not afford to do so.  Tr. 172.  Plaintiff visited Dr. Henthorn on August 11, 2003, requesting neck surgery and another Lortab prescription.  Tr. 167.  Dr. Henthorn gave her a Lortab refill and indicated that she needed to complete the orthopedic examination.  Tr.168. Plaintiff visited an emergency room with complaints of arm and shoulder pain on August 19, 2003.   Tr. 189-91.   She was treated with Demerol and Phenergan, sent home with prescriptions for a Medrol Dosepak and Zanaflex, and instructed to follow up with her

regular doctor.   Tr. 190.   After visiting the orthopedic surgeon, who found nothing pathological to explain Plaintiff's pain, Plaintiff returned to Dr. Henthorn on September 18, 2003.  Tr. 165.  Dr. Henthorn gave Plaintiff injections at C4 and C5, and Plaintiff stated that shoulder rotation was easier after she received the injections.  Tr. 165-66.

Approximately one week later, Plaintiff was involved in an automobile accident.  Tr. 183-84.  Plaintiff presented to the emergency room on September 27, 2003, the day after her accident, where she was diagnosed with a lumbar strain after an x-ray showed no fracture or dislocation.  Tr. 183-84.  Thereafter, Plaintiff began visiting a chiropractor, Dr. Ron Brown, who treated Plaintiff from September 30, 2003, through December 4, 2003.  See Tr. 150-59. Under Dr. Brown's care, Plaintiff "completed a regimen of spinal manipulation and physical modalities with improvement in her condition."  Tr. 150.   During an examination of Plaintiff's cervical spine, Dr. Brown observed,

> ranges of motion are normal with no restrictions.  Distraction, foraminal compression, and Soto-Hall's tests are all negative in the cervical spine. Upon examination of the lumbar spine, all ranges of motion have improved with no pain.  Palpation reveals mild muscle spasm located in the bilateral trapezius, right gluteus and left paravertebral musculature of the lumbar spine. Straight leg raising, Braggard's sign, and Kemp's tests are all negative in the lumbar spine.  Deep tendon reflexes of the upper and lower extremities are plus two equal and even.

Tr. 150.  He further opined that Plaintiff had reached maximum medical improvement, released her from his care, and instructed her to return to full working duties, which he had previously limited.  Tr. 150.  While Plaintiff was being treated by Dr. Brown, she called Dr.

Henthorn for Lortab refills in October, November, and December of 2003, which she received.  Tr.161-63.

Plaintiff visited the emergency room again on February 26, 2004, with complaints of back pain, and indicated that she could not continue to see Dr. Henthorn because she had an outstanding bill for his services.  Tr. 180.  An CT scan of Plaintiff's lumbar spine was performed which revealed an incidental note of vacuum phenomenon within the bilateral SI joints, but otherwise nothing remarkable.  Tr. 182.  Plaintiff was given prescriptions for Ultram and Prednisone and instructed to follow up with Dr. Henthorn. Tr. 181.

Dr. John Saidi performed a consultative examination upon Plaintiff on May 3, 2004. Tr. 192.  At the examination, Plaintiff told Dr. Saidi that she was experiencing pain all over her body that had been occurring for the past 17 years, and that increased, especially after her September 2003 car accident.  Tr. 192.  Plaintiff was using a cane at the time of the examination and Dr. Saidi noted that both with and without the cane, Plaintiff's gait was slow, safe, and stable.  Tr. 193-94.  Dr. Saidi found that Plaintiff could not do toe and heel walking properly, and that her straight leg test was positive on both sides.  Tr. 194.  He rated her motor strength at 4/5 in her biceps, triceps, quadriceps, and hamstrings, and he found normal hand grip strength on both sides.  Tr. 194.  Dr. Saidi observed normal ranges of motion in Plaintiff's knee joints, ankle joints, elbow joints, wrist joints, and finger and thumb joints. Tr. 194.  However, Dr. Saidi found Plaintiff's flexion, extension, lateral flexion, and

rotation in her cervical spine to be decreased with pain and stiffness.  In Plaintiff's hip joints,

Dr. Saidi observed internal rotation, external rotation, abduction, adduction, forward flexion,

and backward flexion were decreased bilaterally associated with pain and stiffness.  Tr. 194.

In Plaintiff's shoulder joints, Dr. Saidi noted her forward elevation, abduction, adduction,

external rotation and internal rotation were decreased bilaterally, and most significantly

decreased on the left side associated with pain and stiffness on the left side, and only stiffness

on the right side.  Id.  His final impression was that Plaintiff was obese, and had a history of

bronchial asthma, degenerative disc disease, osteoarthritis, and a history of bursitis in her left

shoulder.  Tr. 194.

An agency physician completed a Residual Functional Capacity Assessment form in

May 2004 and opined that Plaintiff was capable of occasionally lifting and/or carrying 20

pounds, frequently lifting and/or carrying ten pounds, standing or walking about six hours

in an eight hour workday, sitting with normal breaks for six hours in an eight hour workday,

and that she could perform unlimited pushing or pulling.  Tr.  212-19.  As support for these

conclusions, the agency physician cited Plaintiff's facet arthritis in her cervical spine that was

treated with facet injections and her degenerative disk conditions in her lumbar spine.  Tr.

213.   The doctor also noted that Plaintiff's pain was considered, but that there was no

objective evidence justifying further limitations beyond those assessed. Tr. 214. The agency

physician determined that Plaintiff could frequently climb a ramp or stairs, but never a

ladder, rope or scaffolds, could frequently balance, kneel, crouch, and crawl, but only occasionally stoop. Tr. 214. He also determined that Plaintiff had a limited ability to reach in all directions with only occasional overhead reaching, but he found no other manipulative or other limitations. Tr. 215-16.

On July 27, 2004, Plaintiff saw, for the first time, Dr. George Vascellaro, an osteopath, for evaluation and treatment of her car accident injuries. Tr. 227-28. She complained of low back and bilateral hip pain. Tr. 227. Dr. Vascellaro found a good range of motion in Plaintiff's shoulders with good resistance. Id. Her straight leg raising was negative bilaterally and she was tender to palpation in both hips, but she had a normal gait. Tr. 227. Dr. Vascellaro diagnosed acute lumbar strain and treated it with Lortab and Flexeril as prescribed by Plaintiff's primary care physician, and a three week physical therapy regimen. Tr. 228. At a follow up examination on August 17, 2004, Plaintiff stated that she was doing better and that the medical and physical therapy had helped her. Tr. 221. She stated that although she still experienced back pain, she wanted to be released from Dr. Vascellaro's care for "personal reasons." Tr. 221-22.

In addition to physical conditions, Plaintiff also has a history of mental problems. An agency psychologist executed a Psychiatric Review Technique form on May 26, 2004, which evaluated Plaintiff for affective disorders and the psychologist concluded that Plaintiff's mental impairments were not severe. Tr. 198-211. She found that Plaintiff was only mildly

restricted in her activities of daily living, experienced only mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and experienced no episodes of decompensation.  Tr. 208.

On August 30, 2004, Plaintiff had a consultative evaluation with Dr. Theresa Garton, a psychiatrist.  Tr. 231-34.  Plaintiff told Dr. Garton that she had a history of drug abuse, but had not used drugs since 1995.  Tr. 231.  Dr. Garton noted that Plaintiff's mood was "euphoric and inappropriate to the situation," and found her thought process to be "rapid . . . [with] some flight of ideas" and found it difficult to keep Plaintiff focused on the topic because she jumped from one subject to the next.  Tr. 233.  Dr. Garton's assessment included apparent bipolar disorder type II, currently with hypomania, and assessed Plaintiff's current GAF score at 35.  Tr. 233-34.[1]

Another Psychiatric Review Technique form was completed on September 11, 2004, after Dr. Garton's examination, which evaluated Plaintiff for Dr. Garton's assessment of apparent bipolar disorder type II, currently with hypomania.  Tr. 234-49.  Plaintiff's functional limitations were assessed as mild restrictions on her activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration,

---

[1] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning."  Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (citation and quotation omitted).  A GAF score of 35 indicates "some impairment in reality test or communication, or major impairment in several areas, such as work, or school, family relations, judgment, thinking or mood.  Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32.

persistence or pace.  Tr. 246.  There was not sufficient evidence to determine whether Plaintiff experienced repeated episodes of decompensation, each of extended duration.  Tr. 246.  On the same date, a Mental Residual Functional Capacity Assessment form was completed wherein the medical consultant found that Plaintiff was not significantly limited in her understanding and memory, with the exception of a markedly limited ability to understand and remember detailed instructions, not significantly limited in her sustained concentration and persistence, with the exception of marked limitations on her ability to carry out detailed instructions, not significantly limited in her social interaction, with the exception of a marked limitation in her ability to interact appropriately with the public, and no significant limitations on Plaintiff's adaptation abilities.  Tr. 250-51.

The record also contains mental health records, all of which bear on Plaintiff's mental health status after the Psychiatric Review Technique and Mental Residual Functional Capacity forms were completed.  Starting in November 2004, Plaintiff requested treatment at the Oklahoma County Crisis Intervention Center for a recent relapse into drug abuse after several years of sobriety.  Tr. 269. When Plaintiff first visited the center, she reported "hurt[ing] all over," and that she had smoked cocaine that day and on the prior one.  Tr. 269. On November 16, 2004, Plaintiff visited the Oklahoma County Crisis Intervention Center again to obtain treatment for crack cocaine abuse.  She was preliminarily diagnosed with depressive disorder NOS and cocaine and cannabis abuse, assessed a GAF of 45, and referred to Red Rock Behavioral Health Services for outpatient treatment.  Tr. 265, 267-68.  On January 7, 2005, Plaintiff contacted the Oklahoma County Crisis Intervention Center again

to obtain assistance with her medication.  Tr. 261.  She was preliminarily diagnosed with depression and cocaine and marijuana abuse, assessed a GAF score of 50, and referred to the North Care Mental Health Center for continued treatment.  Tr. 262-64.

Plaintiff began receiving substance abuse treatment at Red Rock on February 8, 2005. At her initial assessment examination, she was diagnosed with major depressive disorder, single episode moderate with secondary and tertiary diagnoses of cocaine and marijuana abuse, respectively, and her GAF score was assessed at 50.  Tr. 279, 289.  The licensed professional counselor who visited with Plaintiff noted that Plaintiff indicated that for the last few months, she had increased sleep, experienced difficulty coping, loss of interest, crying spells, and mood swings, which interfered with her ability to take care of daily tasks.  Tr. 281.  Plaintiff also reported that she had difficulty concentrating on tasks, recognized that she did not always make good decisions, and had difficulty controlling impulses.  Tr. 281.  With regard to her substance abuse, Plaintiff told the counselor she had been sober for ten years but relapsed using cocaine several times in November 2004 to help her cope.  Tr. 281-282. Plaintiff also reported using marijuana several times per month.  Tr. 282.  She attributed some of her distress to her pain and limited back mobility.  Tr. 282.  Plaintiff indicated that she had no friends, only limited social interaction in the community, and was completely reliant on her husband to provide her basic needs.  Tr. 283-84.

Plaintiff was able to obtain medication from North Rock Medication Clinic a few days after her initial visit to Red Rock.  She was given prescriptions for Abilify and Lexepro on February 14, 2005,  but was forced to stop taking Abilify because it caused her to feel faint.

16

Tr. 272-73.  Plaintiff returned to the Oklahoma County Crisis Intervention Center on June 14, 2005, for a Lexapro refill and reported that she had not used crack cocaine for the past three months.  She was described as "happy," and given a GAF score of 55.  Tr. 253-55.

Plaintiff obtained refills of her Lexapro prescription and a prescription for Risperdal from North Rock Medication Clinic in June and July of 2005.  Tr. 270.  She also continued outpatient treatment at Red Rock  with therapy sessions.  Tr. 276-78.  On July 18, 2005, during Plaintiff's final therapy session at Red Rock for which there is a record, Plaintiff stated she was feeling better and she thought her medication was working.  Tr. 275.  She stated that although she still experienced bodily pain which used to depress her, she was beginning to accept that she would experience the pain for the rest of her life.  Tr. 275.

Plaintiff's hearing testimony essentially repeated the complaints expressed and events recorded in her medical records.  Tr. 311-29.  The administrative law judge determined that Plaintiff's statements regarding the symptoms and limitations resulting directly from her substance addiction disorder were credible, Tr. 17, but that her testimony as to the intensity, persistence, and limiting effects of the symptoms of her impairments was not entirely credible.  Tr. 22.  After the hearing, the administrative law judge decided that another consultative psychological examination was necessary.   Tr. 18.   The consultative examination was scheduled for July 21, 2006, but Plaintiff was unable to attend the examination because she was arrested for possession of a controlled dangerous substance without a valid prescription in May, 2006, and confined at the Oklahoma County Detention

Center until she posted bond on December 5, 2006.[2]

In his decision, the administrative law judge concluded that Plaintiff retained the ability to:

> perform all exertional levels of work, compromised by an expectation the claimant would be away from the work station 2 to 3 hours per day resting or reclining due to pain and discomfort.  The claimant also is unable to complete a work day without interruptions from psychologically based symptoms and to perform at a consistent pace without [an] unreasonable number of rest periods and would require to work in relative isolation with limited contact with peers and supervisors.

Tr. 17.  With this residual functional capacity assessment, the administrative law judge concluded that Plaintiff was disabled.  Tr. 19.  <u>See</u> Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (defining residual functional capacity ordinarily as an "individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis," and noting that a "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule.") (emphasis in original).  Later in the decision, when considering the effects of Plaintiff's drug addiction on her work abilities, the administrative law judge concluded that if Plaintiff "stopped the substance use," she would have the residual functional capacity to perform "a wide range of light work with occasional bending forward at the waist, occasional bending at the knees to come to rest on knees, and occasional bending downward by bending [the] legs and spine."

---

[2] The undersigned has taken judicial notice of the docket sheet entered in District Court of Oklahoma County Case No. CF-2006-3625.  Plaintiff eventually pled guilty to this charge, was convicted, and given a suspended sentence.  Currently, the State's motion to revoke Plaintiff's suspended sentence is pending before the district court and set for a hearing on April 15, 2009.

Tr. 20.  Under this residual functional capacity formulation, neither Plaintiff's physical nor mental impairments categorically preclude her from working.  See Tr. 330-31.  Plaintiff concedes that the disability determination as to her mental impairments is materially affected by her substance abuse.  Plaintiff's Opening Brief, p. 14; Reply, p. 2.  Thus, the only issue presented in this appeal is whether, insofar as Plaintiff's physical impairments are concerned, the administrative law judge's conclusion that Plaintiff's substance abuse is a contributing factor material to the determination of disability is supported by substantial evidence.  The undersigned concludes that it is not.

In Salazar v. Barnhart, 468 F.3d 615, 623 (10th Cir. 2006) the Tenth Circuit Court of Appeals discussed the analytical process an administrative law judge must go through prior to concluding that drug and alcohol addiction is material to the conclusion a claimant is disabled.  The opinion focused upon a teletype issued by the Commissioner pertaining to "situations where a claimant has one or more other mental impairments in addition to [drug and alcohol addiction]."  Id.  The Court of Appeals noted that the teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the [drug and alcohol addiction] is *not* a contributing factor material to the disability determination."  Id. (emphasis in original).  The teletype also emphasized:

> The most useful evidence that might be obtained in [cases of multiple mental impairments combined with drug and alcohol addiction] is that relating to a period when the individual was not using drugs/alcohol.  Of course, when evaluating this type of evidence, consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have

19

been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence.

Id. Significantly,

the Commissioner's teletype instructs that where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if she stopped using drugs or alcohol, an [administrative law judge should "find that [drug and alcohol addiction] is not a contributing factor material to the determination of disability."

Id. at 624.

Using the teletype for guidance in determining whether substantial evidence supported the administrative law judge's determination that drug and alcohol addiction was material to the determination that a disability existed, the Salazar Court concluded that the decision was not so supported. In the Court's opinion, the treating physician statements upon which the administrative law judge relied did not amount to substantial evidence because, "neither physician ever assessed whether [the plaintiff's] mental disorders were disabling in the absence of her [drug and alcohol addiction], and neither assessed her abilities in an independent work environment as required by the Commissioner's teletype." Id. at 625.

Applying the Commissioner's drug and alcohol addiction regulations in Drapeau v. Massanari, 255 F.3d 1211, 1215 (10th Cir. 2001), the Tenth Circuit Court of Appeals determined that the plaintiff's claims should be remanded for further proceedings, in part, because the administrative law judge failed to address whether the plaintiff's alcohol abuse was a "contributing factor" to her physical impairments. The Court of Appeals concluded

that the administrative law judge's finding regarding the materiality of the plaintiff's alcohol abuse was not supported by substantial evidence because "none of the physicians who examined or evaluated plaintiff addressed whether her alcohol abuse was a contributing factor in any of her claimed disabilities."  Drapeau, 255 F.3d at 1215.

As in Drapeau and Salazar, there is no evidence here to support the administrative law judge's conclusion that Plaintiff's physical impairments were materially affected by her drug use.  No medical professional ever evaluated Plaintiff's physical condition during the time in which she was actively abusing drugs, and no medical professional ever expressed any opinion as to what Plaintiff's physical limitations would be if she ceased substance abuse.  All of the medical records and opinions pertaining to Plaintiff's physical impairments pre-date November 2004, which is when Plaintiff began using drugs after a ten to fifteen year period of sobriety.  Tr. 265, 269.

The Commissioner contends that the medical records concerning Plaintiff's physical impairments represent an assessment of what Plaintiff's physical limitations would be in the absence of substance abuse because they were generated while Plaintiff was sober and before she relapsed into drug use.  Response Brief, p. 7, 9.  Thus, according to the Commissioner, the administrative law judge could and did rely upon them in formulating his conclusions as to what Plaintiff's physical limitations would be in the absence of substance abuse.  Id.  While this is true, the undersigned is unable to recommend that the Commissioner's decision be affirmed.  The problem with the Commissioner's position is that the administrative law judge relied upon these records to arrive at two drastically

different residual functional capacity determinations - one that included disabling limitations, and one that did not.  The Commissioner may rely on the medical records pre-dating Plaintiff's relapse into drug abuse either to support the administrative law judge's residual functional capacity assessment with the effects of substance abuse factored in, or he may rely upon them to support the administrative law judge's residual functional capacity assessment in the absence of substance abuse.  But the Commissioner cannot point to this one set of records as support for both of the administrative law judge's differing conclusions.

Thus, the administrative law judge used the same set of records for his differing conclusions, namely, that while abusing drugs, Plaintiff was disabled by her physical impairments because she had to spend two to three hours per day resting or reclining due to pain and discomfort, and in the absence of drugs Plaintiff's physical impairments would not be disabling because she could perform a wide range of light work subject to a few postural limitations.  The Commissioner attempts to explain this by arguing that the administrative law judge's inclusion of the disabling two to three hours per day resting limitation in the residual functional capacity assessment factoring in Plaintiff's substance abuse was clearly a clerical error.  Id. at 8.  While the Commissioner may be correct that it was simply a clerical error, the undersigned cannot conclude that the inclusion of the limitation was merely an unintended and "harmless" error as the Commissioner suggests. The administrative law judge specifically included the two to three hour limitation in his residual functional capacity assessment that factored in the effects of Plaintiff's drug abuse,

specifically excluded it in his residual functional capacity finding without the effects of drug abuse, and directly explored the effect of this limitation on Plaintiff's ability to work via his questions to the vocational expert.  Tr. 330-31.  Therefore,  it appears this limitation's inclusion may have been the result of the administrative law judge's considered intent to include it rather than a mere harmless, typographical error.  The Commissioner's arguments in support of the decision are unpersuasive.

Because the administrative law judge's conclusion as to the materiality of Plaintiff's drug abuse upon her physical impairments is not supported by substantial evidence, the undersigned recommends that this case be remanded to the Commissioner for further proceedings.  The undersigned notes that even though there is evidence of substance abuse in the record, the administrative law judge is *not* required to undertake an analysis of the effects of Plaintiff's drug abuse *unless* the administrative law judge *first* concludes that, considering the effects of drug abuse on Plaintiff's ability to work, Plaintiff would be disabled.  See Drapeau, 255 F.3d at 1214 ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C).") (citing 20 C.F.R. § 416.935(a)). If the administrative law judge does not conclude that Plaintiff is disabled when the effects of her drug abuse are considered, there is no need to determine what Plaintiff's residual functional capacity would be in the absence of drug abuse or perform the analysis described in Salazar.

## RECOMMENDATION

Having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the decision is not supported by substantial evidence.  Accordingly, it is recommended that the final decision of the Commissioner of Social Security Administration be reversed, and that the matter be remanded for proceedings consistent with this Report and Recommendation.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by April 1, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 12th day of March, 2009.


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE